IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States Courts
Southern District of Texas
FILED

SEP 15 2003

Michael N. Milby, Clerk of Court

| | |
|---|---|
| Ruben Garcia, Trace Weaver, John Betz, Martin Thebeau, Christopher Lynch, Santiago Escalante, Robbin Cassel, Armando Flores, William Grainger, Miguel Escalante, Bruce Ward, Frank Perez, Ricardo Zuniga, Jr., Jeff Davis, Kevin Phillips, Sergio Ramirez, and Carlos Rios<br><br>Plaintiffs<br><br>v.<br><br>Rene Rodriguez and Jaime Capelo<br>Defendants | § § § § § § § § § § § § § § § §<br><br>Civil Action No. _____<br><br>C-03-364<br><br>Jury Demanded |

## PLAINTIFFS' COMPLAINT

Plaintiffs complain of Defendants as follows:

### 1. Jurisdiction & Venue

1.1)    Jurisdiction is conferred on this Court by 28 U.S.C. § 1331.  This action is brought pursuant to the provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, 18 U.S.C. §1962, 18 U.S.C. §1964(c) & (d) and the laws of the State of Texas.

1.2)    This Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiffs' claims for breach of fiduciary duty, fraud, negligence / legal malpractice and breach of contract and other claims because Plaintiffs' state claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

1.

1.3)     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that all
Plaintiffs and both Defendants reside in the United States District Court for the Southern
District of Texas, in which a substantial part of the events or omissions giving rise to the
claims occurred.

1.4)     Plaintiffs seek to recover compensatory and punitive damages sustained as
a result of the Defendants' conduct, along with the costs of this suit, interest and
reasonable attorneys' fees.

## 2. **Parties**

2.1)     Plaintiff, Ruben Garcia, an individual, is a resident of Nueces County,
Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Garcia was a plaintiff in
the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th
Judicial District Court of Nueces County, Texas.

2.2)     Plaintiff, Trace Weaver, an individual, is a resident of Nueces County,
Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Weaver was a plaintiff in
the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th
Judicial District Court of Nueces County, Texas.

2.3)     Plaintiff, John Betz, an individual, is a resident of Nueces County, Corpus
Christi, Texas and a citizen of the State of Texas.  Mr. Betz was a plaintiff in the suit
numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th Judicial
District Court of Nueces County, Texas.

2.4)     Plaintiff, Martin Thebeau, an individual, is a resident of Nueces County,
Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Thebeau was a plaintiff in

2

the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th
Judicial District Court of Nueces County, Texas.

2.5)     Plaintiff, Christopher Lynch, an individual, is a resident of Nueces County,
Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Lynch was a plaintiff in
the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th
Judicial District Court of Nueces County, Texas.

2.6)     Plaintiff, Santiago Escalante, an individual, is a resident of Nueces
County, Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Escalante was a
plaintiff in the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in
the 148th Judicial District Court of Nueces County, Texas.

2.7)     Plaintiff, Robbin Cassel, an individual, is a resident of Nueces County,
Corpus Christi, Texas and a citizen of the State of Texas.  Ms. Cassel was a plaintiff in
the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th
Judicial District Court of Nueces County, Texas.

2.8)     Plaintiff, Armando Flores, an individual, is a resident of Nueces County,
Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Flores was a plaintiff in the
suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th Judicial
District Court of Nueces County, Texas.

2.9)     Plaintiff, William Grainger, an individual, is a resident of Nueces County,
Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Grainger was a plaintiff in
the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th
Judicial District Court of Nueces County, Texas.

3

2.10)   Plaintiff, Miguel Escalante, an individual, is a resident of Nueces County, Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Escalante was a plaintiff in the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th Judicial District Court of Nueces County, Texas.

2.11)   Plaintiff, Bruce Ward, an individual, is a resident of Nueces County, Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Ward was a plaintiff in the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th Judicial District Court of Nueces County, Texas.

2.12)   Plaintiff, Frank Perez, an individual, is a resident of Nueces County, Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Perez was a plaintiff in the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th Judicial District Court of Nueces County, Texas.

2.13)   Plaintiff, Ricardo Zuniga, Jr., an individual, is a resident of Harris  County, Houston, Texas and a citizen of the State of Texas.  Mr. Zuniga was a plaintiff in the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th Judicial District Court of Nueces County, Texas.

2.14)   Plaintiff, Jeff Davis, an individual, is a resident of Nueces County, Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Davis was a plaintiff in the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th Judicial District Court of Nueces County, Texas.

2.15)   Plaintiff, Kevin Phillips, an individual, is a resident of Nueces County, Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Phillips was a plaintiff in

4

the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th

Judicial District Court of Nueces County, Texas.

    2.16)   Plaintiff, Sergio Ramirez, an individual, is a resident of Nueces County,

Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Ramirez was a plaintiff in

the suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th

Judicial District Court of Nueces County, Texas.

    2.17)   Plaintiff, Carlos Rios, an individual, is a resident of Nueces County,

Corpus Christi, Texas and a citizen of the State of Texas.  Mr. Rios was a plaintiff in the

suit numbered 99-1485E and styled *Gonzalez, et al., v. CITGO, et al.* in the 148th Judicial

District Court of Nueces County, Texas.

    2.18)   Defendant, Rene Rodriguez, is an attorney at law licensed to practice law

in the State of Texas with a principal place of business at 433 S. Tancahua, Corpus

Christi, Texas.  Defendant Rodriguez is a citizen of the State of Texas and may be served

at his place of employment.  Defendant practices under the firm name "The Law Offices

of Rene Rodriguez."

    2.19)   Defendant, Jaime Capelo, is an attorney at law licensed to practice law in

the State of Texas with a principal place of business, 500 North Water Street, Suite 530,

Corpus Christi, Texas.  Defendant Capelo is a citizen of the State of Texas and may be

served at his place of employment.

## 3. **Facts**

    3.1)   In 1997, Plaintiffs were active duty police officers for the City of Corpus

Christi, Texas, who were assigned to and did respond to emergency calls during the

period from May 12 to May 14, resulting from an explosion at the Citgo Refinery in

Corpus Christi, Texas.  At the scene and thereafter, Plaintiffs experienced various

discomfort and symptoms due to conditions at the refinery.  Plaintiffs learned that they

were exposed to toxic chemicals while performing their duties at the Citgo explosion site.

 Plaintiffs sought information regarding the chemicals they were exposed to and the

nature of the risk of illness they faced as a result of exposure.  Each of the Plaintiffs is a

member of the Corpus Christi Police Officers Association, a labor organization that is the

recognized agent for collective bargaining with the City of Corpus Christi and the

representative of the police officers in labor management disputes.  Plaintiffs sought the

assistance of the Police Officers Association in determining what risks existed and what

their rights were.  The President of the Police Officers Association arranged meetings

between officers who had been at the Citgo Refinery and Attorney Rene Rodriguez.  The

Association President recommended to Plaintiffs that they hire Defendant Rene

Rodriguez to represent Plaintiffs in pursuing personal injury claims against Citgo

Refinery.

  3.2) Beginning in May 1997, at meetings at the Police Officers Association hall

organized by the Association President, Defendant Rene Rodriguez, a licensed Texas

Attorney, met with Plaintiffs and urged Plaintiffs to enter into employment contracts on

behalf of the Law Firm of Rene Rodriguez.  Defendant Rodriguez represented he was an

experienced attorney who had knowledge and experience in toxic tort litigation.

Defendant Rodriguez presented the Plaintiffs with a form employment contract for the

Law Offices of Rene Rodriguez which provided a four stage contingent fee arrangement:

"33 1/3% of the gross benefits collected by the Attorney from all sources of recovery if settlement is made before suit if filed thereon;

35% of the gross benefits collected by the Attorney from all sources of recovery if collection or settlement is made after suit is filed;

40% of the gross benefits collected by the Attorney from all sources of recovery if collection or settlement is made within 14 days of trial or if settlement is made after trial commences; and,

45% of the gross benefits collected by the Attorney from all sources of recovery after notice of appeal has been given and appeal bond has been filed."

Defendant Rene Rodriguez represented to Plaintiffs that they would receive a special rate because of their status as police officers. Defendant Rodriguez modified the form in writing to reflect a contingency fee of 33 1/3% and orally modified the agreement to eliminate the requirement that Plaintiffs pay any expenses on recovery. Defendant Rodriguez further represented and agreed that the Law Offices of Rene Rodriguez would be responsible for all expenses. Each Plaintiff entered an individual contract covering Plaintiff's individual claims in reliance on Defendant Rene Rodriguez's representations.

3.3)    Under the terms of the Contract of Employment, any compromise or settlement of an individual Plaintiff's claim required the individual Plaintiff's consent. The contract expressly provides in bold letters:

**"No compromise or settlement of any said claim shall be made by said attorney without my knowledge or consent."**

3.4)    Once the attorney client relationship between Defendant Rodriguez and Plaintiffs was established in 1997, Rodriguez created and implemented a scheme and artifice to defraud his clients of money through The Law Offices of Rene Rodriguez by

7

engaging in a pattern of fraudulent and negligent conduct designed to increase his fee to the detriment of Plaintiffs. The conduct included inflating and overcharging the amount of attorney's fees charged to Plaintiffs in spite of having a written contingent contract for a 1/3 recovery and shifting and commingling settlement proceeds and expenses between Defendant Rene Rodriguez's "contractors" and "residents" clients in a manner that damaged Plaintiffs.

3.5) During the course of the litigation, The Law Offices of Rene Rodriguez represented three "groups" of plaintiffs who claimed damages caused by the Citgo explosion. The groups were the following:

(1) Police Officers (Plaintiffs herein),

(2) Contractors, and

(3) Residents, including minors.

On information and belief, the contractors and residents, unlike the Plaintiffs, contracted and signed a form employment agreement that provided a four-stage contingent fee and required "contractors and residents" to pay expenses. Defendant Rene Rodriguez joined other third party plaintiffs represented by other counsel and participated in multiple lawsuits on behalf of his clients including: *Barrera, et al v. Citgo Petroleum Corp.*; *Cavada, et al. v. Citgo Petroleum Corp.*; and *Acuna v. Citgo Petroleum Corporation*. These and other lawsuits were consolidated in Cause No. 99-1485-E, *Augustina Gonzalez, et al. v. Citgo Petroleum Corporation, et al.*, in the 148th District Court. The suit was a mass tort action involving in excess of 3,500 Plaintiffs. In May, 2002, Defendant Rene Rodriguez and counsel for other plaintiffs worked cooperatively to

advance the interests of all plaintiffs.  In April, 2002, Counsel for plaintiffs, including Defendant Rene Rodriguez, made a joint settlement demand for policy limits. In May, 2002, Defendant Rene Rodriguez represented 21 Police Officers and approximately 300 others.  The remaining approximately 3,000 plaintiffs were represented by several other firms.  In May, 2002, Defendant Rene Rodriguez abandoned the joint prosecution agreement with co-plaintiffs and negotiated a special arrangement for himself.

3.6)    In 2002, Plaintiff Trace Weaver was diagnosed with cancer.  His doctors advised him that he had a very limited time remaining to live.  Plaintiff Weaver was named one of the Bellwether Plaintiffs selected by the Plaintiffs' Committee and scheduled for trial June 3, 2002, in the Citgo litigation.  None of the other Plaintiffs, including "contractors and residents", represented by Defendant Rene Rodriguez was named as a "Bellwether Plaintiff."

3.7)    On May 29, 2002, Defendant Rene Rodriguez sent a letter to Defendant Jaime Capelo, counsel for Citgo Corporation, by facsimile utilizing Trace Weaver's claim to obtain settlement of all of the claims of Defendant Rene Rodriguez's clients. Defendant Rodriguez offered a global settlement proposal: "If you would like for me to propose settlement of all my claims, I will do so upon your request."  On or about June 3, 2002, in the presence of Jaime Capelo, Defendant Rene Rodriguez notified other counsel and the court he had reached a settlement regarding his clients' claims.  Defendant Rene Rodriguez did so without the knowledge or consent of Plaintiffs.

3.8)    In a series of related communications by telephone, facsimile and United States mail, Defendant Rodriguez and Defendant Capelo and others organized and

9

worked out a complex global settlement. The terms of the settlement were unusual and were arranged and intended to enable Defendant Rodriguez to defraud Plaintiffs by charging them excessive fees, to misallocate settlement proceeds in a manner prejudicial to Plaintiffs and to misallocate expenses and to hide, conceal and disguise Defendant Rene Rodriguez's wrongdoing. On July 11, 2002, Defendant Rene Rodriguez signed two Texas Rules of Civil Procedure Rule 11 Settlement Agreements on behalf of Plaintiffs and other clients, committing to an aggregate settlement of residents' claims for about $1000 apiece and Plaintiffs' and contractors' claims for an amount unknown to Plaintiffs. Although Plaintiffs have requested copies of the executed Rule 11 Agreements and exhibits to the Settlement Agreements, Defendant Rodriguez has failed to produce the requested documents. Defendant Rene Rodriguez used Plaintiffs' claims – particularly Trace Weaver's illness – to obtain settlement of his "contractors and residents" clients' claims in a manner that prejudiced Plaintiffs. In signing the Rule 11 Agreements, Defendant Rene Rodriguez acted without the knowledge or consent of Plaintiffs and thereafter has hidden and concealed the terms of the Rule 11 Agreements from Plaintiffs. In failing to disclose the Rule 11 Agreements to Plaintiffs in July 2002 or now, Defendant Rene Rodriguez has continued a pattern of secrecy and concealment that has been his custom and practice in dealing with Plaintiffs.

3.9) The Rule 11 Agreement (Acosta/Acuna) for the residents' claims differed significantly from the Rule 11 Agreement (Barrera/Cavada) for the police officers' claims. The Agreement for the residents (Acosta/Acuna) authorized an advance payment of the settlement to Defendant Rene Rodriguez before the general release was signed by

10

Defendant Rene Rodriguez and before releases were signed by the residents. Defendant Rene Rodriguez had complete discretion as to how to allocate monies without benefit of a guardian ad litem or Court supervision. The Rule 11 Agreement for officers (Barrera/Cavada) required that all Plaintiffs sign full releases before any payment was made to the Law Offices of Rene Rodriguez.

3.10) Contrary to ordinary practice in the legal profession, but pursuant to the terms of the Rule 11 Agreement for the residents as articulated in the final agreement, on August 5, 2002, the Law Offices of Rene Rodriguez received a wire transfer in the amount of $317,000 dollars for the residents in advance and before the formal settlement agreements and releases were signed. Having received the $317,000 dollars, Defendant Rene Rodriguez then entered into and signed two formal Settlement, Indemnity and Confidentiality Agreements on behalf of himself, the Law Offices of Rene Rodriguez and all of his clients on August 7, 2002. At this time, no clients had executed any releases or been informed about a settlement. One agreement dealt with the residents' claims. The second dealt with the police officers' claims. The Agreements were sent to Citgo and signed by Citgo on August 7, 2003. A month later, after Defendant Rene Rodriguez obtained releases signed by Plaintiffs, the Agreements were again sent by facsimile transmission to Citgo's counsel, in Virginia, on September 9, 2002, for the purpose of carrying out the scheme to defraud Plaintiffs and securing payment of the $2,683,000 dollars attributable to the settlement of Plaintiffs Police Officers' claims.

3.11) The Settlement Agreement addressing the Plaintiffs is styled *"Barrera, et al v. Citgo Petroleum Corp*, and *Cavada, et al. v. Citgo Petroleum Corp."* ("Barrera

11

Cavada Agreement"). In the Barrera/Cavada Agreement, Defendant Rene Rodriguez

agreed on behalf of Plaintiffs and others unknown to Plaintiffs to a global settlement of

$2,683,000 dollars. The Barrera/Cavada Agreement provided:

> "2.     This agreement is expressly contingent upon CITGO's receipt of a fully-completed, executed and notarized General Release, Indemnity and Confidentiality Agreement, in the form of Exhibit 2 to this Agreement, from each and every one of the Claimants identified in Exhibit 1 to this Agreement. Should any person identified on Exhibit 1 to this Agreement fail to deliver to CITGO a fully-completed, executed and notarized General Release, indemnity and Confidentiality Agreement in the form of Exhibit 2 to this Agreement, this Agreement shall be void as to all Claimants and shall have no force or effect with respect to any of the Claimants, to Claimants' Counsel, or to CITGO.

> 5.     No later than August 16, 2002, each of the Claimants identified in Exhibit 1 to this Agreement shall deliver to CITGO's counsel a fully-completed, executed and notarized General Release, Indemnity and Confidentiality Agreement in the form of the General Release, Indemnity and Confidentiality Agreement attached as Exhibit 2 to this Agreement.

> 6.     Within seven (7) days after all of the Claimants identified in Exhibit 1 have delivered to CITGO's counsel the fully-completed, executed and notarized General Release, Indemnity and Confidentiality Agreements referred to in paragraph 5 of this Agreement, CITGO shall pay or cause to be paid to Claimants' Counsel the sum of two million six hundred and eighty-three thousand dollars ($2,683,000) (the "Settlement Funds") in full settlement of all claims that Claimants have asserted, and all claims that Claimants may assert in the future, for personal injuries, property damage, or any other injury or damage that allegedly resulted from the May 12-14, 1997 Incident. Claimants' Counsel shall deposit the Settlement Funds into a trust account and shall distribute such funds to Claimants only after the entry of all orders necessary to effect a complete dismissal with prejudice of all claims being asserted by the Claimants in Cause No. 99-1485-E, ***Augustina Reyna Gonzalez, et al. vs. CITGO, Petroleum Corporation, et al.***, In the 148[th] District Court, Nueces County, Texas, and in all cases that have been consolidated with said Cause No. 99-1485-E.

> 7.     Within seven (7) days after CITGO's payment of the Settlement Funds to Claimants' Counsel, CITGO and Claimants' Counsel shall file a joint motion to dismiss with prejudice the claims asserted by Claimants in

12

Cause No. 99-1485-E, *Augustina Reyna Gonzalez, et al. vs. CITGO, Petroleum Corporation, et al.*, In the 148th District Court, Nueces County, Texas, and in all cases that have been consolidated with said Cause No. 99-1485-E. Claimants' Counsel shall use their best efforts to obtain from the court a prompt ruling granting the joint motion to dismiss with prejudice.

8.    In consideration for the payment of Settlement Funds, the sufficiency of which is hereby acknowledged, **CLAIMANTS' COUNSEL HEREBY AGREE TO INDEMNIFY, DEFEND AND HOLD HARMLESS** CITGO Petroleum Corporation, CITGO Refining and Chemicals Company, L.P., and all of their respective predecessors in interest, successors in interest, owners, shareholders, partners, parents, subsidiaries, affiliates, divisions, officers, directors, employees, servants, attorneys, insurers, underwriters, and all other related business organizations and persons (all hereinafter referred to as the "Indemnified Parties") against all claims arising from the May 12-14, 1997 Incident that have been asserted or may hereafter be asserted by, through, or on behalf of each of the Claimants identified in Exhibit 1, including claims that have been or may hereafter be asserted by a Claimant directly or by a Claimant's successors, executors, heirs, administrators or assigns.

11.   In consideration for the payment of Settlement Funds, the sufficiency of which is hereby acknowledged, Claimants' Counsel hereby agree that they will not release any of their work product to any other attorney, including those attorneys who may represent or seek to represent plaintiffs in cases against CITGO. Claimants' Counsel further agree that they will not use any of their work product or information obtained from experts retained for purposes of the Litigation in any current or future litigation involving CITGO."

3.12)   The Settlement Agreement on behalf of residents is styled *Acosta, et al. v. CITGO Petroleum Corporation, et al.*, ("Acosta Agreement"). In the Acosta Agreement, Defendant Rene Rodriguez agreed on behalf of resident clients to a global settlement of $317,000 dollars. The Acosta Agreement provided:

"4.    On or before August 5, 2002, CITGO shall pay or cause to be paid to Claimants' Counsel the sum of THREE HUNDRED SEVENTEEN THOUSAND DOLLARS ($317,000) (the "Settlement Funds") in full settlement of all claims that Claimants have asserted, and all claims that

Claimants may assert in the future, for personal injuries, property damage and any other injury or damage that allegedly resulted from the May 12-14, 1997 Incident. Claimants' Counsel shall deposit the Settlement Funds into a trust account and shall distribute such funds to Claimants only after (a) the execution and delivery of the General Release, Indemnity and Confidentiality Agreements referred to in paragraph 5 of this Agreement, and (b) the entry of all orders necessary to effect a complete dismissal with prejudice of all claims asserted by Claimants in the Litigation, including all orders necessary to effect a complete dismissal with prejudice of all claims by minor and non-compos mentis Claimants, as may be required by law.

5.   No later than September 16, 2002, (a) each of the adult Claimants shall deliver to CITGO's counsel a fully-completed, executed and notarized General Release, Indemnity and Confidentiality Agreement in the form of the General Release, Indemnity and Confidentiality Agreement attached as Exhibit 2 of this Agreement, and (b) the next friend of each minor Claimant shall, for each minor Claimant, deliver to CITGO's counsel a fully-completed, executed and notarized General Release, Indemnity and Confidentiality Agreement in the form of the General Release, Indemnity and Confidentiality Agreement attached as Exhibit 3 to this Agreement. Should any adult Claimant, or the next friend of any minor Claimant, fail to deliver the required General Release, Indemnity and Confidentiality Agreement to CITGO's counsel, such Claimant shall not be entitled to receive any share of the Settlement Funds and Claimants' Counsel represent and warrant that they shall not distribute any share of the Settlement Funds to such Claimant.

6.   In consideration for the payment of Settlement Funds, the sufficiency of which is hereby acknowledged, **CLAIMANTS' COUNSEL HEREBY AGREE TO INDEMNIFY, DEFEND AND HOLD HARMLESS** CITGO Petroleum Corporation, CITGO Refining and Chemicals Company, L.P., and all of their respective predecessors in interest, successors in interest, owners, shareholders, partners, parents, subsidiaries, affiliates, divisions, officers, directors, employees, servants, attorneys, insurers, underwriters, and all other related business organizations and persons (all hereinafter referred to as the "Indemnified Parties") against all claims arising from the May 12-14, 1997 Incident that have been asserted or may hereafter be asserted by, through, or on behalf of each of the Claimants identified in Exhibit 1, including claims that have been or may hereafter be asserted by a Claimant directly or by a Claimant's successors, executors, heirs, administrators or assigns.

14

7.    No later than September 20, 2002, CITGO and Claimants' Counsel shall
      fie a joint motion to dismiss with prejudice all claims asserted by the
      Claimants in the Litigation. Claimants' Counsel shall use their best efforts
      to obtain from the court a prompt ruling granting the joint motion to
      dismiss with prejudice.

8.    The parties to this Agreement agree that they will each bear their own
      costs relating to the Litigation, including any costs relating to obtaining
      approval or finalization of their settlement. Claimants' Counsel agree that
      they will bear the cost of any guardian ad litem fees that may be incurred
      in obtaining approval of the settlement."

3.13)  After he executed the Barrera/Cavada Agreement, Defendant Rene
Rodriguez first informed Plaintiffs he had reached a settlement. In violation of Rules
1.04 and 1.08 of the Texas Disciplinary Rules of Professional Conduct, Defendant Rene
Rodriguez continued his pattern of secrecy and omission. Defendant failed to provide a
written statement of the remittance to Plaintiffs and the method of calculation. He
refused to disclose the terms and conditions of the aggregate settlement. He concealed
that he had agreed to indemnify Citgo and agreed not to use any work product in litigation
against Citgo.

3.14)  Defendant Rene Rodriguez intentionally withheld from Plaintiffs all terms
of the global settlement he and Defendant Jaime Capelo negotiated including the
settlement amounts of $2,683,000 dollars and $317,000 dollars. Instead of disclosing the
nature and terms of the two global agreements he had entered into on behalf of Plaintiffs,
totaling $3,000,000 dollars, Defendant Rene Rodriguez chose to falsely represent to each
Plaintiff that CITGO had "offered" $25,000 dollars to settle their claims. Defendant
Rodriguez told Plaintiff Weaver that CITGO was "offering" $500,000 dollars. Defendant
Rodriguez never informed Plaintiffs that CITGO's true offer that Defendant Rene

15

Rodriguez accepted on behalf of Plaintiffs and others was in fact $3,000,000 dollars and

that the $25,000 dollars being "offered" to Plaintiffs in exchange for waiving their right to

pursue their claims was arbitrarily determined by Defendant Rene Rodriguez for the

purpose of his own unjust enrichment. Defendant Rodriguez further concealed and

disguised his scheme to defraud Plaintiffs by presenting each Plaintiff with a formal

release, indemnification and settlement document. The settlement documents signed by

Plaintiffs were negotiated as part of each global agreement. While the global agreement

notes the existence of the settlement agreement to be presented to Plaintiffs, the

settlement agreement presented to each Plaintiff makes no mention of the existence of the

global agreement thereby contributing to the deception and inability of Plaintiffs to

uncover the scheme being perpetrated against them. Defendant Rene Rodriguez' pattern

of fraudulent and manipulative conduct continued through his coercing of Plaintiffs into

accepting his "offer" by telling them if they did not take the net amount, he would

withdraw and they would be without counsel. By concealing the terms of the true

settlement and refusing to provide an accounting to Plaintiffs, Defendant Rene Rodriguez

was able to withhold more than $500,000 dollars which should have been paid to

Plaintiffs. In doing so, Defendant Rene Rodriguez created a fund from which to pay the

bribe to Defendant Capelo and pay guardian ad litem fees to attorneys.

3.15)   When some Plaintiffs questioned Defendant Rene Rodriguez about his

attorney fees, he followed a pattern of falsely claiming the confidentiality provisions of

the settlement agreement precluded him from revealing details regarding the agreement to

his clients. He falsely represented that he had only taken the agreed 33 1/3% contingency

16

fee, but refused to disclose the amount of his fee or the total value of the settlement. When Plaintiff Weaver sought clarification of possible subrogation claims by health insurance providers, Defendant Rene Rodriguez represented he would indemnify and hold Plaintiff harmless. When Plaintiff Ruben Garcia questioned Defendant Rene Rodriguez regarding the terms of the settlement, Defendant refused to disclose the terms of the agreement and instead pressured Plaintiff Garcia into accepting the settlement by blaming Garcia for delaying payments to other Plaintiffs. When Plaintiff Garcia sought legal advice from other counsel, Defendant Rene Rodriguez attempted to coerce Plaintiff by sending Garcia a letter via United States Mail in which Defendant Rodriguez accused Plaintiff of violating the confidentiality provision of the settlement and threatened to deny him his share of any settlement proceeds.

    3.16)   Defendant Rodriguez and Defendant Capelo agreed that, in exchange for a "kickback", Defendant Capelo would assist Defendant Rene Rodriguez in obtaining a settlement payable to the Law Offices of Rene Rodriguez under which Defendant Rene Rodriguez would have control and the ability to manipulate the proceeds for the benefit of the enterprise and Defendant Rene Rodriguez, personally. Seeking "kickbacks" is part of Defendant Capelo's practice. He has commented to other defense attorneys that the way defense counsel get rich is to obtain money from plaintiff's counsel and that he has followed this practice. Defendants Capelo and Rodriguez agreed that Defendant Capelo would receive a "kickback" in exchange for obtaining a global settlement and enabling Rodriguez to defraud Plaintiffs by fraudulently overcharging attorney's fees.

17

3.17)   Use of a global and aggregate settlement made it easier to conceal, hide and wrongfully impose higher attorney's fees than were agreed.  The scheme further involved using the Law Offices of Rene Rodriguez and the ordinary customs and practices of the legal profession to disguise and conceal Defendants' fraud on Plaintiffs. Part of the scheme included charging improper sharing of legal and medical expenses by all of the clients, thereby hiding the true amounts of expenses having been incurred, even though Plaintiffs had no responsibility for expenses and no expenses had been incurred on behalf of some clients.  The scheme included hiding the terms of the global settlement that was entered into with Citgo; thus, the global settlement was made without the knowledge or approval of the Plaintiffs.  The purpose of the scheme was to provide a mechanism under which the Defendant Rodriguez could inflate his fee and fee expenses to the detriment of Plaintiffs.  In doing so, Defendant Rene Rodriguez wrongfully withheld in excess of $500,000 dollars owed to Plaintiffs and thereby damaged Plaintiffs in an amount in excess of $500,000 dollars.

3.18)   It was part of the pattern and scheme to defraud the Plaintiffs by Defendant Rodriguez that he would instruct the Plaintiffs not to communicate with other individual plaintiffs the nature and amount of the settlement.  The pattern and scheme included concealing the settlement documentation and making the Plaintiffs believe that the settlement between all of the Plaintiffs was confidential and they were forbidden from discussing the settlement even with other Plaintiffs represented by Defendant Rene Rodriguez.  The pattern and scheme also included the grouping or aggregating of the settlements proceeds.  Even though Defendant Rene Rodriguez represented three distinct

18

groups and three cases, the settlement proceeds were made in two parts. The pattern and scheme included agreements with Defendant Capelo that individual releases for the "resident" clients that Defendant Rodriguez represented were not required. The Plaintiffs police officers were purposefully not shown the release settlement documents known as the "Barrera Release Settlement" for $2,683,000 dollars nor the "Acosta Release Settlement" for the residents in the amount of $317,000 dollars for a total aggregate settlement of $3,000,000.00 dollars.

3.19)   The scheme included the Law Offices of Rene Rodriguez having the use and benefit of the funds until forced to pay benefits to clients long after the funds were received. Although he received the funds on August 5, 2002, under the Acosta Agreement, Defendant Rene Rodriguez did not cause a settlement hearing to be held until nine (9) months later on, April 4, 2003. The Settlement hearing before the 148th District Court was perfunctory and provided Defendant Rene Rodriguez with the appearance of judicial scrutiny when no meaningful scrutiny occurred. Defendant Rene Rodriguez did not pay the minor plaintiffs' settlement funds into the registry of the court until May 2003, after the "kickback" scheme was disclosed to the presiding judge of the 148th District Court, Judge Rose Vela, in April 2003. At the time of the "kickback" disclosure to Judge Vela, Defendant Rene Rodriguez received notice from Citgo's counsel that the "kickback" disclosure had been made to the Court "necessitated by the report to Akin Gump attorneys of improprieties which, if correct, might have an impact on the Court's proceedings and, in particular, on the Court's approval of the settlement of the parties herein." After receiving notice of the "kickback" disclosure, on May 27, 2003, Defendant

19

Rene Rodriguez sought an order from Judge Vela authorizing deposit of the minors'
settlement proceeds into the registry of the Court.  It appears from the Court records the
order was submitted ex parte.  Despite the fact the Court had conducted a settlement
hearing on April 4, 2003, and ten days later received a notice of misconduct involving a
bribe to a lawyer and elected public official that may impact the Court's approval of that
settlement, Judge Vela signed the order for deposit without requiring Defendant Rene
Rodriguez or Defendant Jaime Capelo to address the allegation of bribery.  Defendants
Rene Rodriguez and Jaime Capelo utilized and counted on the lax oversight of the Judge
of the 148th District Court to create a veneer of legitimacy for their actions and to lessen
the likelihood of discovery of the $100,000 dollars "kickback" and the larger scheme to
defraud.

3.20)   The scheme to defraud included a continuing pattern of related acts of
concealment.  Defendant Rene Rodriguez used the Law Offices of Rene Rodriguez to
conceal the "Barrera Settlement" amount.  He concealed unusually large payments made
to so call "investigators" exceeding $25,000.00 dollars.  He concealed the terms of the
settlement from Plaintiffs.  Defendant Rene Rodriguez concealed the amount that each
Plaintiff received from the other Plaintiffs.   He concealed payments made to Defendant
Capelo.  By agreeing to indemnify Citgo against Plaintiffs, Defendant Rene Rodriguez
became Citgo's insurer and stepped into the shoes of Citgo.  Without Plaintiffs' consent
or knowledge, Defendant Rene Rodriguez became Plaintiffs' adversary and negotiated a
settlement between himself and Plaintiffs while concealing the conflict he had created
and the fact the funds were under his control.

20

3.21)    Plaintiffs first learned of the payment to Defendant Capelo in July 2003, as

a result of press coverage.  The Corpus Christi Caller Times reported that a sealed

envelope had been delivered to Judge Vela which contained the affidavits of Citgo

Attorney Jeffrey K. Sherwood and others.  The newspaper quoted Mr. Sherwood's sworn

statement:

> "a.    On Friday, April 4, 2003, Defendant Rene Rodriguez, Plaintiffs'
> counsel in this matter, asked to meet with Mr. Gonzales.  They met
> on April 4, 2003, after a hearing in this case.  During that meeting,
> Mr. Rodriguez explained that he was concerned about an upcoming
> "public disclosure" and that he wanted to advise Mr. Gonzales.
>
> b.    According to Mr. Rodriguez, he and Jaime Capelo, then a partner
> in the Chaves firm and defense counsel in this matter, had "worked
> a deal" whereby they agreed that as part of settlement in this matter
> of the claims asserted by Mr. Rodriguez's clients, Mr. Capelo
> would personally receive a payment for his part in negotiating a
> settlement of these claims.  Mr. Gonzales was told by Mr.
> Rodriguez this payment was a "kickback."  Mr. Rodriguez
> allegedly told Mr. Gonzales that he agreed to this arrangement
>
> c.    At a later date, Mr. Capelo approached Mr. Rodriguez and asked
> for the "kickback" payment in the amount of $100,000 dollars.
> Mr. Rodriguez then wrote a check payable to "Jaime Capelo" in the
> amount of $100,000 dollars.  The check was dated September 23,
> 2002.
>
> d.    Subsequently Mr. Capelo asked that "P.C." be added to the payee
> line on the check, which was allegedly done in a manner such that
> it was obvious that "P.C." was added later.  According to Mr.
> Rodriguez, it was decided by Mr. Capelo and Mr. Rodriguez that
> the payments would be attributed to referral by Mr. Capelo to Mr.
> Rodriguez of a different case alleging medical malpractice.
>
> e.    Mr. Rodriguez then said he had second thoughts about the payment
> and ordered the bank to stop payment.  Notwithstanding this order,
> payment was made by the bank to Mr. Capelo.

f.      Mr. Chaves has a copy of the September 23 check.

g.      Mr. Chaves and certain of his partners met with Mr. Capelo on the night of April 4, 2003, to investigate these allegations. Mr. Capelo denied Mr. Rodriguez's allegations at the meeting and explained that the check was a payment for a referral on a medial malpractice case. They met again on April 6, 2003, to discuss this matter further. Mr. Capelo has since resigned from the Chaves law firm. Mr. Chaves asked for more information about the medical malpractice case that was the basis for the alleged referral fee. Mr. Capelo did not provide sufficient additional information.

h.      Also on April 7, after receiving the call from Mr. Chaves, I received a call from Mr. Capelo. Mr. Capelo advised me that the politics in Corpus Christi relating to tort reform were very "hot" and that numerous false accusations had been made about him. He strongly denied that he had done anything improper. I asked Mr. Capelo whether a payment had been made and he said he did obtain such a payment for referral of a medical malpractice case to Mr. Rodriguez, which did not involve Citgo."

The sworn statement was submitted to Honorable Rose Vela, Judge Presiding, on or about April 14, 2003, along with a notice of disclosure to the Court stating "this submission to the Court has been necessitated by the report to Akin Gump attorneys of allegations of improprieties which, if correct, might have an impact on the Court's proceedings and in particular on the Court's approval of the settlement of the parties herein."

3.22)    The State District Court's handling of the notice and supplemental notice of disclosure, affidavits and materials is inconsistent with the Texas Rule of Civil Procedure, Nueces County Local Rules and Standard Procedures for insuring openness and fairness. The envelopes are not marked to reflect the date of receipt. There is no docket entry reflecting when the court opened and reviewed the affidavits. The affidavits

22

were not revealed or discussed on the record until a request and motion to do so was

made by the Corpus Christi Caller Times. Even after the July 3, 2003, hearing, releasing

the four affidavits, the affidavits were not filemarked until August 28, 2003. There is no

indication what action, if any, the district judge took regarding other affidavits. Despite

being placed on notice that the settlement was tainted, in May 2003, Judge Vela signed an

undated order authorizing Rene Rodriguez to deposit settlement proceeds for minors in

the registry of the Court. There is no final judgment. By failing to exercise oversight,

whether through negligence or otherwise, the State District Court created a circumstance

that made it possible for Defendant Rene Rodriguez and Defendant Jaime Capelo to cheat

Plaintiffs and others through the Law Offices of Rene Rodriguez. The lax supervision by

the Court of Defendant Rene Rodriguez's activities and failure to require Citgo to follow

the Texas Rules of Civil Procedure regarding the submission of sealed documents may in

part be explained by the longstanding personal and political relationship between

Defendant Rene Rodriguez and the Court. Defendant Rene Rodriguez utilized his

relationship to secure personal advantage and to commit a fraud on the Court and

Plaintiffs.

     3.23)   After learning of the questionable relationship between Defendants Capelo

and Rodriguez, Plaintiff Ruben Garcia retained Canales & Simonson, P.C. in July 2003 to

pursue claims against Defendants. After receiving Plaintiffs' repeated requests for

documents and an explanation of the manner in which settlement proceeds were allocated

and fees determined, on or about August 12, 2003, Defendant Rene Rodriguez sent out a

series of letters by United States certified mail, return receipt requested, to Plaintiffs and

others.  In the letters, Defendant Rene Rodriguez admitted overcharging Plaintiffs and purported to refund the excess fee of $2,792.00 dollars plus 10% interest for each Plaintiff except Weaver.  Defendant Rodriguez withheld any information about the aggregate settlement and excused the excess fee as due to negligence.  In letters to the individual Plaintiffs, Defendant Rene Rodriguez stated:

> "In having to deal with this matter, I have had to review the entire CITGO file (about 15 boxes) to obtain documents that are being requested by various parties.  In reviewing approximately 400 Citgo client files, I have discovered that I apparently agreed to charge attorney fees in the amount of 33 1/3% to the police officers and 40% to everyone else.  I guess since the contracts were signed in 1997 and the settlement occurred in 2002, I did not remember.  As such, I am enclosing $3,071.20 dollars ($2,792.00 dollars due plus 10% interest) which accounts for the difference."

3.24)   In fact, at the time he caused Plaintiffs to execute releases, Defendant Rene Rodriguez represented the fee charged was 33 1/3%.  Assuming the four-step form contingent agreement applied to clients other than Plaintiffs, no client had a trial setting that would trigger 40% at the time of settlement and minor clients by statute can only be charged 33 1/3% absent court approval.  It appears from the accounting Defendant provided to Plaintiffs' counsel in response to Plaintiffs' requests, Defendant Rene Rodriguez charged minor clients no fees or reduced fees.  In short, Defendant's explanation was false and was intended to lull Plaintiffs into foregoing a full accounting. Further Defendant Rodriguez withheld critical documents and information in order to frustrate and preclude Plaintiffs from fully untangling Defendants' web of deception and betrayal or discovering the full extent of the damages.  In doing so, Defendants continued

24

the pattern of concealment and misdirection in attempting to create a seemingly legitimate façade to mask their misconduct.

3.25)   In a document labeled Citgo Settlement Breakdown furnished by Defendant Rene Rodriguez to Plaintiffs' counsel on or about August 2003, via United States mail in furtherance of the scheme, Defendant Rene Rodriguez treated the settlement as a global $3,000,000 dollars settlement; provided a forty percent attorney fee of $1,200,000 dollars; and, allocated case expenses and medical expenses without regard to the identity the client on whose behalf the expenses were incurred.  Although the two settlement agreements established two distinct settlement funds, Defendant Rene Rodriguez commingled the funds, transferred funds between clients and failed to properly account for the funds.  Defendant Rene Rodriguez cheated and defrauded Plaintiffs by taking in excess of $500,000 dollars that in truth and in fact rightfully belonged to Plaintiffs.  Defendant Rene Rodriguez represented that Judge Vela authorized him to disburse unclaimed funds allocated to residents to one of the Plaintiffs due to the serious nature of Plaintiff's condition.  No order authorizing such illegal and improper action has been found in the Court's records.  As of the date of this complaint, Defendant Rene Rodriguez continues to hold settlement proceeds and to conceal and disguise the extent and nature of his fraud.

### 4. **Claims: Violation of 48 USC §1962(c)**

4.1)   Each of the proceeding paragraphs is incorporated by reference as if fully set forth herein.

4.2)     Defendant Rene Rodriguez has been associated with the enterprise, the
Law Offices of Rene Rodriguez, for over a decade.  Defendant Rene Rodriguez has
conducted and participated in the conduct of the enterprise through a continuing pattern
of racketeering activity.  Defendant Jaime Capelo has aided and abetted Defendant Rene
Rodriguez in his scheme to defraud Plaintiffs and has accepted a bribe and assisted
Defendant Rene Rodriguez in breaching his fiduciary duty of honest services to Plaintiffs
in furtherance of the scheme to defraud Plaintiffs.  Defendant Jaime Capelo has further
sent correspondence by United States mail and by wire (facsimile) in arranging the details
of the agreement that gave Defendant Rene Rodriguez control of settlement proceeds
without reasonable accountability.  Defendant Jaime Capelo has therefore participated
indirectly in the conduct of the enterprise through a pattern of racketeering activities.

4.3)     The Law Offices of Rene Rodriguez is an association in fact of lawyers,
paralegals and others that has operated and been organized and continues to operate and
be organized as a law office on a continuing basis for over a decade.  The Law Offices of
Rene Rodriguez is distinct and separate from Defendants.  The Law Offices of Rene
Rodriguez has a listing in the telephone directory; utilizes letterhead under the name
"Law Offices of Rene Rodriguez"; maintains bank accounts with checks printed in the
name of the Law Offices of Rene Rodriguez; and is identified as the contracting party in
attorney/client fee agreements, including those entered by Plaintiffs.

4.4)     The Law Offices of Rene Rodriguez at relevant times engaged in interstate
commerce and activities that affect interstate commerce.  Such activities in and affecting
interstate commerce include the filing of suits against foreign corporations engaged in

26

interstate commerce, engaging in discovery of out of state witnesses, the use of out of

state professional services, the use of interstate facsimile communications, the

employment of individuals, the receipt of monies from foreign corporations, and the use

of federal banking institutions. In representing Plaintiffs, Defendant Rene Rodriguez sued

Citgo Petroleum Corporation and Citgo Refining and Chemicals Company, L.P., both

foreign companies engaged in interstate commerce with their principal offices located

outside Texas; received wire transfers through the National Banking System in the

amounts of $2,683,000 dollars and $317,000 dollars from Citgo; caused employees of the

Law Offices of Rene Rodriguez to travel to Washington, D.C.; utilized the United States

mail, telephone and facsimile machines to communicate with out of state attorneys,

witnesses and others regarding the case; retained and utilized out of state experts; and,

engaged in other activities directly affecting interstate commerce.

4.5)    Defendants have conducted the affairs of the enterprise and engaged in

related acts calculated, organized and undertaken for the purpose of depriving the

Plaintiffs of the honest service of Defendant Rene Rodriguez; defrauding Plaintiffs and

causing Plaintiffs damages of more than $500,000 dollars in the form of excessive

attorney's fees, imposition of improper expenses, withholding or delaying payments and

other injuries; and, disguising, concealing and hiding Defendant Rene Rodriguez's

misconduct.  Defendant Rene Rodriguez's and Jaime Capelo's fraud and concealment

have gone on for well over a year and are ongoing, posing the threat of continued criminal

violations.

27

4.6)    The scheme included extracting an aggregate settlement from Citgo; causing Citgo to place settlement proceeds in the account of the Law Offices of Rene Rodriguez under the control of Defendant Rene Rodriguez; creating a settlement structure that facilitated concealment of Defendant Rene Rodriguez's breach of fiduciary duties; giving Defendant Rene Rodriguez maximum flexibility and control over the allocation and distribution of the settlement proceeds; providing for Defendant Rene Rodriguez to maintain settlement proceeds that belonged to clients, including minors, indefinitely; utilizing the Law Office of Rene Rodriguez in a manner to create the false appearance of following customary practices of the legal profession; and, allowing Defendant Rene Rodriguez to organize and arrange contact with Plaintiffs and others in a manner that provided Defendant Rene Rodriguez with the ability to coerce and pressure Plaintiffs into signing releases in reliance on material misrepresentations and glaring omissions. Defendant Rene Rodriguez placed settlement proceeds belonging to 91 minors in the registry of the court only after the bribery of Defendant Jaime Capelo was revealed to the District Court. According to Defendant Rene Rodriguez's accounting records, he continues to control settlement proceeds in the trust account of the Law Offices of Rene Rodriguez. As set forth above, Defendants utilized the United States mail and the wires in violation of 18 USC §§ 1341 and 1343 on multiple occasions lasting well over a year and continuing. The mailings, use of the telephone, and theft of Defendants' honest services, constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961 (1), (5) and that is continuous and related.

28

4.7)    In addition, Defendants committed a Texas felony described as commercial bribery by violating Texas Penal Code §32.43, when as fiduciaries to their clients, Defendants solicited, accepted and agreed that Defendant Rene Rodriguez would "kickback" $100,000 dollars to Defendant Jaime Capelo on the understanding that the money exchanged would influence the conduct of Defendant Capelo as fiduciary in relation to the affairs of his client, CITGO.  Defendants also breached Texas Penal Code § 32.43, Commercial Bribery Act, by causing Defendant Capelo to breach his fiduciary duty of honesty to his employer, The Law Firm of Chaves, Gonzales and Hoblit, L.L.P., by failing to report the $100,000 dollars payment to his employer.

4.8)    Defendants engaged in a pattern of related activities of using customary practices and procedures of the legal profession in handling cases to build a framework which enabled Defendants to defraud Plaintiffs and to cloak their activities with an appearance of legitimacy that made it possible to conceal and disguise their scheme to defraud Plaintiffs.  In agreeing to engage in commercial bribery in violation of Texas Penal Code § 32.43, Defendants agreed to explain the $100,000 dollars payment and later, falsely, explained the payment as a customary referral fee in a medical malpractice case.  In constructing a framework of disbursement of settlement proceeds, Defendants utilized customary legal correspondence and documents exchanged through the United States mail and over the wires to create an appearance of a legitimate settlement.  Among the documents utilized are the two Rule 11 Agreements, two Settlement Agreements, and multiple releases executed by Plaintiffs and others.  To persuade others to act, Defendant Rene Rodriguez provided indemnification agreements.  Knowing that he did not have the

29

ability to provide indemnity if required to do so, Defendant Rene Rodriguez agreed to indemnify Citgo to secure payment of the settlement proceeds to himself and agreed to indemnify Plaintiff Weaver to secure Weaver's execution of a release. To shroud the settlements in secrecy, Defendants utilized confidentiality clauses.

4.9)   In order to create the appearance that he had complied with his obligations under the aggregate settlement rule and had properly handled the settlement of the minors' claims, Defendant Rene Rodriguez caused the parents and guardians of minors to execute false affidavits, arranged for a settlement hearing to create a record of apparent compliance with the Texas Rules of Civil Procedure and obtained an ex parte order authorizing him to deposit the minors' funds into the registry of the court. In doing so, Defendants created the false appearance that the minors' interests had been protected by oversight of the guardian ad litem and by the supervision of the 148th District Court. To insulate the fraud from review and to create an appearance of legitimacy, Defendant Rene Rodriguez agreed to file Joint Motions For Dismissal with Prejudice and to use his best efforts to secure Orders of Dismissal with Prejudice of all claims of his clients. Entry of such an Order would discourage any further inquiry and insulate the settlement from challenge. Defendants' use of the customs and practices of the legal profession to accomplish and thereafter conceal their wrongdoing presents a continuing threat of criminal activity. The agreed capstone act of concealment has not been accomplished, yet, in that orders of dismissal with prejudice have not been entered. Defendants' scheme is especially reprehensible in that it erodes confidence in the judicial process in a manner that does incalculable damage to the judicial system.

4.10)    Plaintiffs have suffered injury by reason of Defendants' RICO violations as a result of Plaintiffs being forced to bear excessive attorney's fees and misallocated case expenses, and having settlement funds transferred from their case to the residents' case improperly.

### 5. Count 2– Conspiracy 18 U.S.C. § 1962 (d)

5.1)    Each of the proceeding paragraphs is incorporated by reference as if fully set for herein.

5.2)    In violation of 18 U.S.C. § 1962 (d), Defendants, persons as defined in RICO, commencing on or about 1997, and continuing, conspired to violate 18 U.S.C. § 1962.  Defendants agreed to join the conspiracy, agreed to commit the predicate acts of commercial bribery, mail fraud and wire fraud and knew the predicate acts were part of a pattern of racketeering activity in the operation of the enterprise, the Law Offices of Rene Rodriguez.  The enterprise benefits from the conspiracy by receiving and controlling the settlement proceeds.  As alleged in the foregoing paragraphs and in furtherance of the scheme to conduct the affairs of the Law Offices of Rene Rodriguez through a pattern of racketeering activity, Defendants utilized the United States mail and the wires in violation of 18 U.S.C. §§ 1341 and 1343 and committed commercial bribery.  Plaintiffs have suffered damages as a result of Defendants' conspiracy.  Defendants committed the following overt acts in furtherance of the conspiracy:

### OVERT ACTS

Overt Act 1    On or about May 29, 2002, Defendant Rene Rodriguez sent a letter to Jaime Capelo, counsel for Citgo, by facsimile (wire transmission) offering to make a

31

global settlement proposal: "If you would like me to propose settlement of all my claims,
I will do so upon your request."

Overt Act 2    On or about May 2002, Defendant Jaime Capelo and Defendant Rene
Rodriguez agreed that Defendant Jaime Capelo would use his position as Citgo's attorney
to secure a global settlement for clients of Defendant Rene Rodriguez in exchange for a
$100,000 dollars "kickback". Defendants Capelo and Rodriguez further agreed that, if
the payment was discovered, to claim the payment was a referral fee in a medical
malpractice case.

Overt Act 3    On or about the weekend of June 2 and 3, 2002, Defendants Rene
Rodriguez and Jaime Capelo reached agreement that the claims of Defendant Rene
Rodriguez's clients would be settled for $3,000,000 dollars.

Overt Act 4    On or about June 3, 2002, Defendants Rene Rodriguez and Jaime Capelo
announced to the 148th District Court and other counsel that an agreement has been
reached settling the claims of Defendant Rene Rodriguez's clients.

Overt Act 5    During the period from June 3, 2002 to July 11, 2003, Defendants Rene
Rodriguez and Jaime Capelo engaged in a series of communications by telephone,
facsimile and United States mail, organizing and arranging the terms of the settlement in
a manner that enabled Defendant Rene Rodriguez to defraud Plaintiffs by charging them
excessive fees, commingling and misallocating settlement proceeds and expenses, and to
conceal and disguise his wrong-doing.

Overt Act 6    On or about July 8, 2002, in furtherance of the conspiracy, Defendant
Jaime Capelo sent Defendant Rene Rodriguez two letters with draft Texas Code Civil

Procedure Rule 11 agreements, one about Rodriguez's "Acuna clients (Residents)" and one about Rodriguez's "Barrera and Cavada clients (police officers and contractors)". The Acuna letter references an amount of $1,000 dollars per resident.

Overt Act 7    On or about July 8, 2002, Defendant Rene Rodriguez made handwritten revisions of the draft Acuna agreement to eliminate the provisions that payment would be made after execution of the Rule 11 Agreement; the execution of releases; and entry of orders to effect a complete dismissal of all claims against Citgo.  Instead Defendant Rene Rodriguez inserted a provision that Defendant Rene Rodriguez would indemnify, defend and hold Citgo harmless from claims by his clients.

Overt Act 8    On or about July 11, 2002, Defendant Rene Rodriguez executed two Rule 11 Agreements, one for residents and the other for police and contractors.

Overt Act 9    On or about August 5, 2002, Defendants, pursuant to the Rule 11 Agreements, caused Citgo to pay to the Law Offices of Rene Rodriguez  $317,000, via wire transfer to the Laredo National Bank, prior to signing the Settlement, Indemnity and Confidentiality Agreements.

Overt Act 10   On or about August 7, 2002, without the knowledge or consent of his clients, Defendant Rene Rodriguez executed two Settlement, Indemnity and Confidentiality Agreements, purporting to act on his own behalf and on behalf of the Law Offices of Rene Rodriguez and his individual clients.  The Settlement Agreements placed control of two separate settlement amounts (Acuna -- $317,000 dollars; Barrera/Cavada $2,683,000 dollars) in Defendant Rene Rodriguez's hands.

33

Overt Act 11   Beginning on or about August, 2002, and continuing thereafter, Defendant Rene Rodriguez had meetings with individual Plaintiffs at the Law Offices of Rene Rodriguez to compel Plaintiffs to sign releases.  The meetings other than with Weaver followed the same pattern: Defendant Rene Rodriguez notified the individual Plaintiff that he had negotiated a settlement under which the Plaintiff would receive $25,000 dollars.  Defendant Rene Rodriguez told Plaintiff he could not disclose the terms of the settlement, but represented that his fee was the amount agreed to by the parties. Defendant Rene Rodriguez admonished each Plaintiff the settlement was secret and Plaintiff could not discuss the settlement with anyone including other Plaintiffs or Plaintiff would forfeit the settlement.  Defendant Rene Rodriguez refused to provide a written settlement statement or to allow Plaintiffs to examine the Settlement Agreement signed by Defendant Rene Rodriguez.

Overt Act 12   On or about September 8, 2002, in furtherance of the conspiracy Defendant Rene Rodriguez caused a facsimile transmittal (wire transmittal) to be sent to counsel for Citgo with signed copies of the Settlement Agreements in the Acosta, Barrera and Cavada cases.

Overt Act 13   On or about September 16, 2002, Defendants caused a wire transfer of $2,683,000.00 dollars to be made from Citgo to the Laredo National Bank account of the Law Offices of Rene Rodriguez, placing the funds under the control and direction of Defendant Rene Rodriguez.

Overt Act 14   On or about September 23, 2002, Defendant Rene Rodriguez issued a check in the amount of $100,000 dollars to Defendant Jaime Capelo as a "kickback" for

34

Defendant Jaime Capelo's services in securing the settlement with Citgo under terms that gave Defendant Rene Rodriguez control of the funds and the ability to commingle the funds, to charge excessive fees and expenses, and to disguise and conceal his fraud.

Overt Act 15   On or about September, 2002, Defendant Jaime Capelo deposited the $100,000 dollars check paying the agreed "kickback".

Overt Act 16   During the period from December 2002 to January 2003, Defendant Rene Rodriguez caused the parents and guardians of 91 minors represented by Defendant Rene Rodriguez to execute identical affidavits for approval of settlement and release of claims. The affidavits contain a number of false statements including that "I understand and have considered all of the terms of the Settlement Agreement" when in fact Defendant Rene Rodriguez failed and refused to disclose the terms of the Agreement or to explain the consequences of an aggregate settlement.  Defendant Rene Rodriguez caused the affidavits to be executed as part of the scheme to create the appearance of a legitimate settlement.

Overt Act 17   On or about April 4, 2003, in further of the conspiracy, Defendant Rene Rodriguez caused a settlement hearing to be held before Judge Rose Vela in which he sought approval of the minor settlements.

Overt Act 18   After receiving notice that Citgo had notified Judge Vela of possible fraud in connection with the settlement, Defendant Rene Rodriguez submitted an order to Judge Vela ex parte, authorizing Rene Rodriguez to deposit $65,975.00 dollars into the registry of the Court.  Judge Vela signed the order.  On or about May 27, 2003, Defendant Rene

Rodriguez tendered the minor settlement proceeds to the district clerk pursuant to the undated order of Judge Vela.

Overt Act 19   On or about August 12, 2003, Defendant Rene Rodriguez sent out a series of letters by United States certified mail, return receipt requested, to Plaintiffs and others in furtherance of the scheme to defraud Plaintiffs and to conceal and disguise the fraud. In the letters, Defendant Rene Rodriguez claimed to have discovered an innocent mistake in calculating attorney's fees, when in fact the information provided by Defendant Rene Rodriguez was false and calculated to mislead and lull Plaintiffs into overlooking Defendant Rene Rodriguez's wrongdoing.

### 6. **State Causes of Action**

### A.   **Breach of Contract**

6.1)   Plaintiffs incorporate the allegations contained in the foregoing paragraphs by reference as if fully set forth.

6.2)   Defendant Rene Rodriguez materially breached the Contingency Fee Agreement between Defendant Rene Rodriguez and Plaintiffs by charging Plaintiffs a fee in excess of that agreed to by parties; by failing to secure Plaintiffs' consent before entry into a settlement; by charging Plaintiffs expenses; and by commingling and misallocating settlement proceeds to other cases.  As a result of Defendant Rodriguez's breach, Plaintiffs have suffered damages and been required to obtain counsel to seek redress. Plaintiffs are therefore entitled to recover damages, costs of suit and reasonable attorney's fees.

36

**B.**     **Malpractice/Negligence**

6.3)     Plaintiffs incorporate the allegations contained in the foregoing paragraphs by reference as if fully set forth.

6.4)     As Plaintiffs' lawyer, Defendant Rene Rodriguez owed Plaintiffs a duty of care in handling the Citgo claim on behalf of Plaintiffs.  Defendant Rodriguez breached his duty of care by failing to act in the manner a reasonably prudent attorney would in handling a case of the nature of Plaintiffs' claims against Citgo.  Among other negligence, Defendant Rene Rodriguez did not spend enough time reviewing the settlement agreement and explaining the terms of the agreement with Plaintiffs; Defendant Rene Rodriguez failed to accurately calculate Defendant Rene Rodriguez's attorney fees and the expenses properly attributable to Plaintiffs, if any; Defendant Rene Rodriguez failed to disclose the gross settlement amount and the manner in which the settlement proceeds were allocated among Defendant Rene Rodriguez's clients; Defendant Rene Rodriguez failed to disclose payments made to third parties; Defendant Rene Rodriguez failed to disclose case expenses.  As a result of Defendant Rene Rodriguez's malpractice, Plaintiffs have suffered damages.

**C.**     **Breach of Fiduciary Duty, Conspiracy and/or and Aiding and Abetting Breach of Fiduciary Duty.**

6.5)     Plaintiffs incorporate the allegations contained in the foregoing paragraphs by reference as if fully set forth.

6.6)     Defendant Rene Rodriguez has breached his fiduciary duties to Plaintiffs including:

37

a.   his duty of loyalty and utmost good faith;

b.   his duty of care;

c.   his duty to refrain from any self dealing, including dealing for the benefit of persons such as Defendant Jaime Capelo, whose interests are closely identified with Defendant Rene Rodriguez.

d.   his duty to act with integrity of the strictest kind;

e.   his duty of fair, honest dealing;

f.   his duty of full disclosure, including the duty not to conceal matters that might influence Defendant Rene Rodriguez's actions to Plaintiffs' prejudice;

g.   his duty to make a full and fair disclosure of every facet of a proposed settlement; and

h.   his duty not to renegotiate or alter the fee to the detriment of Plaintiffs.

Plaintiffs have suffered damages as a result of Defendant's breach of fiduciary duty.

6.7)   By accepting payment from Defendant Rene Rodriguez and assisting Defendant Rene Rodriguez in corrupt settlement proceedings and concealing Defendant Rene Rodriguez's misconduct, Defendant Capelo participated in and is liable for Defendant Rene Rodriguez's breach of fiduciary duty as a joint tortfeasor.  Defendant Capelo benefited from Defendant Rene Rodriguez's breach of fiduciary duty and should be required to disgorge all benefits obtained.

**D.   Defalcation**

6.8)   Plaintiffs incorporate the allegations contained in the foregoing paragraphs by reference as if fully set forth.

6.9)     Defendant Rene Rodriguez has committed defalcation by inadequately accounting for funds held in his fiduciary capacity and by misapplying those funds contrary to the agreement between Plaintiffs and Defendant Rene Rodriguez and thereby taking in excess of $500,000 dollars that properly belonged to Plaintiffs.  As a result Plaintiffs have suffered damages in excess of $500,000 dollars.

### E.     Fraud

6.10)    Plaintiffs incorporate the allegations contained in the foregoing paragraphs by reference as if fully set forth.

6.11)    Defendant Rene Rodriguez made material misrepresentations to Plaintiffs regarding the terms and conditions of calculation of legal fees and expenses to secure Plaintiffs' execution of settlement documents.  At the time, Defendant Rene Rodriguez made the misrepresentations, he knew they were false or Defendant Rene Rodriguez made the misrepresentations recklessly, as a positive assertion, without caring for the truth.  Defendant intended Plaintiffs to rely on the misrepresentations and Plaintiffs did rely on the misrepresentations in executing the settlement documents and accepting the settlement proceeds.  The misrepresentations have caused Plaintiffs injury.

### F.     Exemplary Damages

6.12)    Plaintiffs incorporate the allegations contained in the foregoing paragraphs by reference as if fully set forth.

6.13)    Defendants' actions were malicious and were calculated to unjustly enrich Defendants and injure Plaintiffs.

39

6.14)   Plaintiffs seeks exemplary damages for the personal injuries caused by Defendants' malice.

### G.      Conditions Precedent

6.15)   All conditions precedent have been performed or have occurred.

### H.      Demand for Jury

6.16)   Plaintiffs demand a jury trial.

### I.      Prayer

For these reasons Plaintiffs ask that Defendants be cited to appear and answer and that Plaintiffs have judgment against Defendants for the following:

a.      Forfeiture of all attorney fees received by Defendant Rene Rodriguez;

b.      Disgorgement of all benefits received by Defendants;

c.      Actual damages;

d.      Treble damages under RICO;

e.      Exemplary damages;

f.      Reasonable attorney fees incurred by Plaintiffs;

g.      Costs of suit;

h.      Prejudgment and post judgment interest; and

i.     All other relief, in law and equity, to which Plaintiffs may be
       entitled.

Respectfully submitted,

J. A. Canales
Federal I.D. No. 1163
State Bar No. 03737000
Hector A. Canales
Federal I.D. No. 29396
State Bar No. 24006951
**CANALES & SIMONSON, P.C.**
Attorneys at Law
2601 Morgan Ave.-P.O. Box 5624
Corpus Christi, Texas 78465-5624
Telephone: (361) 883-0601
Facsimile: (361) 884-7023

**ATTORNEYS FOR PLAINTIFFS**

**JURY DEMAND**

Plaintiffs demand trial by jury on all issues so triable.

J. A. Canales